Oh yes, oh yes, oh yes, the Honorable Appellate Court of the 5th District of the State of Illinois is now in session. You may be seated. Good morning everyone. Um... Are you going to announce the case this morning? Okay, the first case on our backet this morning is 524-0725, In Re Marriage of Conner. Are the attorneys here? Come on up and join us. Mr. Lori Long? What is your... how do you pronounce your name, sir? Lang? No, that's the wrong one. You're an admittant here. Okay, I had the wrong one. I'm sorry, I apologize. Mr. Minson, are you ready to proceed? Okay, you may come up and give us your argument, please. Okay, are you ready? Yes. Your Honors, my name is Ed Minton and I represent Charles W. Conner. May it please the Court and Counsel. Mr. Conner is 72 years old. He unfortunately had a stroke in 2006 that left him partially paralyzed. Since that time, his only source of income has been the yearly means-tested SSI amount. Issue one, which is an issue for both 3A and 3.3B and significant, whether a means-tested concurrent SSI benefit is a means-tested SSI benefit. This is an issue of law. The review is de novo. I think it's also a case of first impression. Now, 25 years ago, the Davis case, Supreme Court of Arkansas, made this observation about means-tested concurrent SSI benefits. It says if a disabled worker draws $300 per month in SSD based on their employment history, he or she may also be entitled to an additional $194 to raise him or her to the, quote, federal guaranteed minimum income level for a disabled person. Maintenance of this minimum income level is thus the fundamental purpose of SSI. And it states to the federal regulation, it says the basic purpose underlying the Supplemental Security Income Program is to assure a minimum level of income for people who are age 65 or older or who are blind or disabled and who do not have sufficient income and resources to maintain a standard of living at the established minimum income level. Now, the state argued at the trial court, and it's argued here, that in that example the state Supreme Court of Arkansas gave, that the intent of Congress was to only allow the $194, that that's all it was. And that's not what the intent of Congress was. It was the entire benefit. When you get your Social Security benefit, it has on there the other calculation of the income. So your entire benefit is whatever that SSI amount is that year. Doesn't it include the amount that you earned during your work life? It does. But I think that the, and we'll get to the Federal Office of the Child Support Enforcement, their determination of how you calculate this later. But even with the Illinois court, the Illinois Supreme Court, when I file a fee application, fee waiver, it doesn't, it just says SSI. That implies as a current benefit. When I attached his benefit, it had a concurrent benefit on it for this fee waiver. So to that extent, the fact that it's not specifically mentioned in 3A is not, I don't think, particularly relevant. It's implied because it's the same benefit. You automatically get the fee waiver, and it doesn't say that if you've got a concurrent benefit, you don't qualify. It just says you receive SSI. And we all know what that means. It means you're poor. You're means tested. You have less than $2,000. In this case, less than that for him. So I think that that's the main issue there is this minimum maintenance and this minimum income level is thus the fundamental purpose of SSI. It's not whatever is added on. It's the same benefit for everyone, regardless of what the underlying foundational amount is. It's the same benefit, and that was the intent of Congress, to make sure that this subsistence income that's solely for the use of this person is to be used for this person. And then so we have one year later, the Illinois Appellate Court in Lozada v. Rivera, citing to this Davis case, Congress intended SSI to provide a minimum income for the satisfaction of the recipient's needs only. It follows that a state law requiring part of the recipient's allowance, that's the total amount, to go to her dependents does severe damage to a clearly substantial federal interest. To burden SSI benefits in this way would reduce the recipient's income below what Congress has decided is the minimum she should have to satisfy her own basic needs. As one court has stated, the recipient with minimum, if the purpose is to provide the recipient with minimum necessary financial resources, that purpose is defeated if the resource is depleted. We're talking about the entire resource, not part of it. We're talking about the entire. So what's the facts in this case? Okay. I want to quote from the state's brief from pages 6 and 7. Conner began receiving supplemental security income SSI benefits in 2008. That's the result of his stroke and paralysis. In 2015, when Conner turned 62 years old, he began receiving concurrent SSI and Social Security requirement benefits, though the combined benefit amount was the same as when he received only SSI. Then the department began issuing income withholding orders on the Social Security Administration in 2018 for support Conner owed in this case as well as for a different case in Franklin County for a total withholding amount of $252. So I would submit that the state violated the intent of Congress at that point by taking that money away from him. And I think that in order for the state to prevail, this court would have to find that Congress intended that Mr. Conner's means-tested minimum income level should be less at age 62 than it was at 61. That at age 61, his means-tested minimum income level should be near 75% of the poverty line. That's what SSI is. Doesn't quite get there. But at age 62, his means-tested minimum income level should be near 50% of the poverty line. And I don't think that's what Congress intended. Now, I think that's what the Federal Office of Child Support Enforcement thinks Congress intended. How do you interpret the regulation that allows the states to take the option? That's the option, yes, the option. So it says, at the option of the state, identify cases involving a non-custodial parent who is a recipient of concurrent SSI payments and either SSDI or SSR benefits under Title II of the Act, and prevent the garnishment of these funds from the non-custodial parent through an income withholding order, return the funds to a non-custodial parent in courts with 303-100AA. There's the catch-all. They've got to have provisions to return the money. And after determining that the payments were incorrectly garnished from the non-custodial parent through an income withholding order. Now, it says option, but let's look at the context of where this option occurs. Okay. This option relates to computerized systems modifications. It has nothing to do with the substantive issue of whether they can take it. So if you look at 307-11, it says functional requirements for computerized support enforcement systems. It says at a minimum, each state's computerized support system established must have, and then in subsection C, it says to the maximum extent feasible, a system facilitate the collection and disbursement of it through the state disbursement unit under 454B of the Act, and that says the state disbursement unit shall use automated procedures, electronic processes, and computer-driven technology to the maximum extent feasible, efficient, and economical. So that's what we're dealing with. And then we get down to section three, automatic use of enforcement procedures. And then we have the option. They have an option of updating their computer systems in order to automatically stop this from happening. You know, they've already determined this is causing a great deal of harm to disabled and elderly people. They don't want you to do it, but some of the states have problems updating the system. But this option only applies to updating the system. It says in the final rule from June the 9th of 2020, there is one amended and one new option provision as a result of these regulations, which are one-time enhancements to the statewide child support systems. The description and total estimated burden for the changes are described in the chart below. There's a chart here that has what the state's cost is going to be, what the federal's going to be for updating. Okay. It goes on to say for the optional enhancement, we estimated approximately 27 states will opt to do the pay-for, the computerized modification, so this will automatically stop this harm from happening. It doesn't mean that the state can go ahead and keep taking the money. It just says they have an option of updating their system in order not to do it. Then why would there be a return language on how to return the money? Well, because that was another issue, and that's in the federal register, too. When you take it from the financial account, you know where you took it, and you can set up your system to return it within the five days pretty easily. Why would you do that if you're updating your computer systems as you pledge? Why would the state return the money? That's why I'm asking now. I mean, you would think that the state of Illinois would not intentionally want to harm disabled and elderly people by reducing their basic subsistence income. Yes, I agree. But isn't the goal to return funds to the parents that is due to deficiency in the child support, this is only for a rearage, correct? This is for a rearage. Sure. So there's an outstanding rearage of $14,000, so, I mean, you have competing interest here, correct? You do, but I think the interest of the person that's receiving the subsistence income overrides that, because that was the whole purpose of the federal mandate that started back in 2014, starting back with the Notice of Proposed Rule Modification, Flexibility, Efficiency, and Modernization in Child Support Enforcement, November 17, 2014. And it says, and this was the whole purpose behind 3A and 3.3B even being enacted in the state of Illinois first time in 2017. It says, we propose to extend similar protection to recipients of concurrent SSI and benefits under Title II as we believe these noncustodial parents are in similar financial straits. The state must review these noncustodial parents' financial accounts to determine whether there are available assets above subsistence level available to garnish other than SSI or concurrent SSI and benefits under Title II of the Act. We believe that these new procedures will provide safeguards for the beneficiary to ensure that his or her SSI or concurrent SSI benefits under Title II of the Act are not inappropriately garnished. But let me stop you there. Are you, is what you're reading, what other sites you're reading there, is that related to current support or an arrearage? Well, they subsequently modified it to put SSR in. Obviously, that's going to deal with the elderly people. But you're not answering the question. Is that related to child support, current child support obligation or a child support arrearage? There is a distinction between those two. Well, there's not a distinction if you're dealing with subsistence income. The whole purpose of the federal mandate was to protect the subsistence income. And that's in 45 CFR 302.56C1II, taking into consideration the basic subsistence needs of the noncustodial parent. And we can go back to the case in Lozado, and it says that taking of any amount, we don't care what the reason for it, we don't care how it's taken, the taking of that does severe damage to a federal interest, and that being that Mr. Conner should have a basic income that's used for his food and his basic needs. And I think that the state is in violation of that, and I think, and it's an issue of law, so I'm going to turn it over to the court to decide. It's stay noble. But the purpose behind the congressional intent is to have the person to use those, that funds, that minimum amount for their own needs. So I'm going to, oh, okay. He'll have some time off. Oh, okay. Okay. Thank you, Your Honor. You may proceed. May it please the court. Good morning, Your Honors, Assistant Attorney General Nancy Jack, on behalf of the Department of Health Care and Family Services. I intend to focus my argument on the circuit court's denial. Could you speak up a little bit? I'm sorry. That doesn't rank. Okay. I intend to focus my argument on the circuit court's denial of the amended petition for a $0 support order. But if this court has any questions as to injunctive relief, I can answer those as well. The court's order was correct for two reasons. First, Section 505A.3.3b does not apply to past due support. And second, Federal Rule 307.11 does not prohibit garnishment of SSR benefits through an income withholding order. Beginning with Section 505A.3.3b, which concerns Count 1 of the amended petition, the plain language of the statute indicates that the legislature intended it to apply only to current support and not to past due support. And that's because 505A refers to a child's current needs and the parent's current financial resources. For example, 505A sets forth a parent's duty of support for the reasonable and necessary physical, mental, and emotional health needs of the child. And most importantly, it defines child as someone being under the age of 18 or age 19 or younger if still in high school. Connor's children became adults and were emancipated many, many years ago. So Section 505A.3.3b would not apply because the duty of support only applies to a child and to the child's current needs. What Connor is alleging or is trying to do is trying to use 505A.3.3b, which governs how you calculate a current support order, and he's trying to reach back and change the calculation of his arrearage balance. And 505A just does not provide for that. This is also evident from the fact that other sections of 505 do speak to past due support, which shows that the statute does distinguish between current and past support and treats them differently. 505G.5 says that when a support obligation ends, an arrearage balance shall continue as an obligation not of current support, but payments toward that arrearage, which shows that an arrearage is not considered a current support. And 505D characterizes support orders as a series of enforceable judgments as of when they become due, showing that past due support becomes a debt like any other judgment, rather than an obligation to meet a child's current needs based on a parent's current finances. So it just would not make sense or be correct to apply a $0 support order to past due support where 505A only speaks to current support and other sections explicitly address past due support. But even if 3.3B did apply to an arrearage, Conor's SSR benefit can still be garnished because it is not excluded from the definition of gross income. Gross income, as defined in the statute, only excludes means-tested assistance, which is SSI. SSR is not means-tested assistance. As Your Honor pointed out earlier, it's based on prior employment. What about the argument that they make, though, that the benefit didn't increase once SSR was added? How would you counter that? I think that will jump me into the federal role of explaining, because I would like to set out the difference between SSI and SSR. But to get directly to your question, SSI is a benefit when you have zero income. So it raises you up to a minimum basic standard of living. However, when you turn 62 and your retirement benefits kick in, you do have income, so now you don't need as much to raise you to a basic standard of living. So he may think that's unfair, but that's how SSI and SSR work. But the total is the same. The total is the same, because no matter what the income is, SSI is only a benefit to bring you up to a minimum subsistence level. And if he has income, he doesn't need as much benefit to bring him up to that income level. But isn't it true in order to qualify for SSI, he still has to maintain a minimally low income from his SSR? If he received enough SSR, it might knock him out of the SSI benefits at some point. Correct. So what if the court took enough money out that he's below... I mean, the court modified it to $20. Correct. But the state took substantially more. So how do we reconcile what's going on? Well, in this case, what was being garnished was about $35. There was another case in Franklin County. I don't know the specifics of that. But if we were just focused on this case, the previous order, $35 was being garnished. And there is a safety valve, basically, in Section 510 of the Marriage Act, which he did take advantage of. And he brought the petition to modify his payment. So there is that safety valve available for him, which he did take advantage of. And the court held a hearing and reduced it to $20 a month based on all the financial information in his testimony. So the fact that SSR is income and can be garnished, there's still this option for somebody to bring a petition to reduce their payment if they are unable. Could it be reduced to zero on the arrearage under 510? It could be reduced to zero in theory under 510. Because for that section, you need to show a substantial change in circumstances. So the court could do that. The court did, in fact, in this case, though, correct, reduce the arrearage amount? No, well, to be clear, yes, Your Honor. The court reduced it from $35 to $20. If the court felt he did not have enough income to pay the $20, it could have reduced it to zero. But we're saying that 3.3b, the $0 court order, that's not applicable. But under 510, if the court felt that zero was appropriate, it could have done that. I'm still not clear on why the state believes they can automatically deduct a certain amount. What provision gives the state the right to do that? To automatically deduct it? Yeah, from the SSR payment. So the federal rule, should I go into it? If that's what you're basing your argument on. Okay, so the federal rule, so 307.11c3, sub 1 only talks about bank accounts. And it says you cannot garnish SSR and SSI from a bank account, because that's a concurrent benefit and they're all commingled into the bank account. So there's no way to distinguish between taking SSR and SSI. But sub 3 doesn't deal with a bank account. It only deals with an income withholding order. And the income withholding order is something that is set to the Social Security Administration. And it targets only an SSR and takes the amount out of that benefit before the SSR gets transferred into a bank account and later commingled with SSI. So the income withholding order is this enforcement mechanism that we can guarantee that is only directed to take SSR. And again, the difference between SSI and SSR is with SSI, Congress has protected those benefits from garnishment. But SSR is much different. It's a Title II benefit based on past remuneration, and Congress has carved out a narrow exception for Title II benefits based on prior wages. And Congress has said they're going to allow those benefits, because it's considered income, to be garnished for a support obligation and for maintenance. So it applies to current as well as the rear? The federal rule does not distinguish, Your Honor. Do you think it's key in interpreting the Illinois statute, though, that we're looking at a rearage versus current? Because my memory, and it's been a while since I did trial child support type cases, but my memory is that with regard to rearage, the state has several provisions that are more punitive, such as you can suspend somebody's driver's license if they have an arrearage, but you don't suspend it for falling behind on current, if I remember correctly. I still believe you can suspend if you fall behind on current support. Here he was always behind. He was held in contempt three times, the 80s and 90s. So he was always behind. But, yes, I think that 505A really just applies. It's a guidance how to calculate a current support obligation for a current child based on that parent's current finances. He's trying to have 505A reach back into his arrearage payment, which is just not what the statute is intended to do. It's not what the statute says. But he can bring a petition like he did under 510 for a modification, and the court will hold a hearing and decide what payment is appropriate. So it would be your position that the SSR benefits for current arrearage, current payments, can be used as well as for arrearage? Correct. Okay. The federal rule does not distinguish. Did the court rule otherwise in this case, that it could only be used for arrearage? The court did not address that specifically. The court was well aware we're only dealing with an arrearage. And the court did comment that it decided on $20 a month because it said it's such a small amount coming from him and we're really trying to pay off this arrearage that's been going on for many, many years. And so the court did consider all the options, including keeping it current. Keeping it the same, reducing it, or even reducing it to zero. But the court did not feel that was appropriate. The court felt that it was such a minimal amount and that Connor was not paying what he was obligated to pay for many, many years. Do you agree with the appellant that our standard of review is de novo, or is there any aspect of Judge Sanders' ruling that is abuse of discretion or some other standard? I agree the interpretation of the statute is de novo. I do not see anywhere that he is arguing the $20 was an abuse of discretion. I do not see that he argued that. But does that affect the standard of review as to that amount? A modification, an order, review of an order modifying a support obligation is reviewed for abuse of discretion. But we argue the only thing at issue here is the interpretation of the statute, which is de novo review. I see that my... No other questions. Thank you. Okay. Do you have any further? No. If the court has no further questions, we ask that this court affirm the circuit court's denial of Connor's petitions. Thank you. Okay. You said you wanted to affirm the denial. The petition of modified child support... Right. We are not contesting that part of the order. Okay. We just... No cross appeal. No cross appeal, no. Okay. Very good. No other questions. All right. There are no other questions for the court. Thank you. Thank you. Any testimony? As to the standard on the decision to reduce it to $20, I think that under 3.3b, Mr. Connor has a medically proven disability. You don't need anything more about the means testing. Just need to show that. Then the burden goes to them to show why it should not be zero. There was no burden shifting that the trial court did. So I think the guidelines presume a zero amount unless they could show that he has income to pay, whether on the current or past. And I think the court did not consider that. That was before the court. And it says with Vance v. Joyner, if you don't follow the guideline, you have to give written findings specifying the reasons for the deviation and the presumed amount, which would have been zero. He didn't do that. So it's abuse of discretion on that standard, but it's automatic abuse of discretion if you don't do what the statute says on that. So to answer that. Now, I think just to conclude, I think there's three points where I believe the State's brief misses the mark here. One, the assertion that the court looked to the intent of the State legislature for the answers to these questions. I think that's wrong because the State's intent was to fulfill the mandate. Thus it could. So the court should look to the intent of Congress and to the Federal mandates to decide whether this is means-tested income that's to be used for the subsistence, basic needs of Mr. Conner. Two, the assertion that Conner's financial resources were only relevant until 1997. That's wrong. It's his assets and income today that's relevant as well as his disability. And three, the assertion that Mr. Conner is attempting to zero out the debt. That's wrong. That's not what Mr. Conner is asking the court to do. Mr. Conner is asking the court to protect his Federal guaranteed minimum income level. He's asking the court to suspend collection of the past due support until such time as he has the ability to pay from income or assets other than the income intended to be used solely for his basic subsistence needs. Mr. Conner is asking the court to uphold the intent of Congress and the intent of the Federal mandate to protect the basic subsistence needs of a disabled and elderly person. Thank you. And what relief are you asking for? What's that? What relief are you asking for? Well, I was asking the court to be remanded and have an order entered suspending any collection of the payment until such time as he has assets above subsistence level. Well, the reason I ask that question is you're playing fire with a petition to modify child support. That petition was granted. Yes. Are you asking that that be set aside? Because the granting was the $20. Well, to the extent that that was wrong, it should have been reduced to zero, Your Honor. Okay. So you want that vacated? Yes, and have it sent back and have the court order to enter a zero amount for the collection until such time as they can prove that he has income or assets above subsistence level that's supposed to be used just for his purposes alone. I'm just wondering, you say the state's brief that asking to wipe out the debt is incorrect, but if you're saying his pay should be suspended until such time as he can pay and he's elderly and disabled, when would that period be? It seems like the effect would be to wipe it out. As a practical matter, it's unlikely that Mr. Conner will recover from his disability. It's unlikely that he will ever have any income beyond that minimum level, which is a little below 70 percent, 5 percent of the poverty level. You're correct. It's a practical matter. It may be that there's no more paid on this debt. It doesn't mean the debt goes away. The debt's there. So like any other debt, you get a judgment. I get a judgment against somebody and their assets are exempt. I've got a judgment. It doesn't go away. I just can't collect on it. Thank you. Anything else? No, thank you. All right. Thank you, Mr. Conner. Thank you, Your Honor. Thank you, counsel, for your argument today. This matter will be taken under advisement and we will issue an order in due course. Have a good day.